UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
BRUNO PIERRE,                                                :
                                                             :
                            Plaintiff,                       :
                                                             :        **MEMORANDUM AND ORDER**
            -against-                                        :
                                                             :        14 Civ. 3790 (VMS)[1]
HILTON ROSE HALL RESORT & SPA,                               :
HILTON RESORTS CORPORATION, ROSE                             :
HALL ASSOCIATES, LLC and ROSE HALL                           :
OPERATING ASSOCIATES, LLC,                                   :
                                                             :
                            Defendants.                      :
------------------------------------------------------------- X

**VERA M. SCANLON, United States Magistrate Judge:**

Before the Court is the motion of Defendants Hilton Rose Hall Resort & Spa; Hilton

Resorts Corporation; Rose Hall Associates, LLC; and Rose Hall Operating Associates, LLC

(collectively, "Defendants") to dismiss Plaintiff Bruno Pierre's ("Plaintiff") Amended Complaint

pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. In this diversity action,

Plaintiff seeks damages for personal injuries that he allegedly sustained on August 9, 2013, while

vacationing at a hotel in Jamaica that, at the time, was owned and operated by Defendants. See

generally Amended Complaint, ECF No. 24-1. For the reasons stated herein, Defendants'

motion for summary judgment is **granted in part and denied in part**.

---

[1]    The Parties have consented to the undersigned's jurisdiction for all purposes. See ECF
No. 10.

# I. FACTUAL BACKGROUND[2]

At all relevant times to the within action, Defendants owned and operated the Rose Hall Resort (the "Resort") in Montego Bay, Jamaica.  <u>See</u> Defs' 56.1 ¶ 1; Pl's 56.1 ¶ 2.  On or about August 9, 2013, Plaintiff was a guest at the Resort while vacationing with his family when he decided to ride the waterslide at the Resort's pool.  <u>See</u> Defs' 56.1 ¶ 1; Pl's 56.1 ¶¶ 3-4.  There was one Resort staff member stationed at the top of the slide, but there were no staff members positioned at the bottom of the slide or in the pool itself.  <u>See</u> Pl's 56.1 ¶¶ 6-7.  Plaintiff did not receive any directions or instructions from the staff member stationed at the top of the slide, nor did he observe any warning signs.  <u>See</u> Pl's 56.1 ¶ 7.  Plaintiff rode the waterslide and was injured when his foot hit the bottom of the pool after he entered the water from the waterslide. <u>See</u> Defs' 56.1 ¶ 5; Pl's 56.1 ¶¶ 3-4.  According to Plaintiff, had he seen any warning signs, he "probably" would not have gone down the waterslide.  <u>See</u> Pl's 56.1 ¶ 11.

---

[2]    Although Defendants and Plaintiff each filed their own 56.1 Statements pursuant to Local Rules 56.1(a) and (b), neither party responded to their adversaries' 56.1 Statement.  In accordance with Local Civil Rule 56.1(c), when a party fails to specifically controvert facts contained in a 56.1 statement, such uncontroverted facts "will be deemed admitted for purposes of the motion [for summary judgment.]"  <u>See</u> Local Civil Rule 56.1(c); <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 72 (2d Cir. 2001) ("The facts set forth in a . . . party's [56.1] statement will be deemed to be admitted unless controverted by the opposing party's statement.") (internal quotations & citation omitted).

"A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 73 (2d Cir. 2001). Here, the Parties largely, if not entirely, agree that the relevant facts are undisputed, and as such, I will "look past [their] filing failures," <u>Derienzo v. Metro. Transp. Auth.</u>, 404 F. Supp. 2d 555, 557 n.3 (S.D.N.Y. 2005), and review all of the Parties' arguments, the facts on which they rely, and the evidence supporting same.  Bearing this in mind, the facts in this section are taken from the assertions set forth in Defendants' 56.1 Statement ("Defs' 56.1"), ECF No. 65-9, and Plaintiff's Counter-56.1 Statement ("Pl's 56.1"), ECF No. 65-12, and are undisputed unless otherwise noted.

## II.     RELEVANT PROCEDURAL HISTORY

Plaintiff's Amended Complaint mentions various theories of liability—i.e., the waterslide was in a defective/dangerous condition; the water level was at an unreasonable level; Defendants failed to properly supervise the pool, provide warning signs and/or barrier, or remove a dangerous condition—which are all alleged in the alternative.  See Amended Complaint, ECF No. 24-1 ¶ 18.

Plaintiff's Fed. R. Civ. P. 26(a) disclosures, which were served approximately one month after the filing of the Amended Complaint, contain a section entitled, "Theory of Liability." Declaration of Nicholas Kauffman ("Kauffman Decl."), ECF No. 65-2 ¶ 5, Ex. C.  This section states as follows:

> Defendants were negligent in the design, construction, operation, and supervision of the slide the Plaintiff sustained injuries upon, waterslide [sic], in its main pool area in that the water levels from the slide terminus outward to 6 feet in front of the slide terminus was not at a sufficient depth to prevent the Plaintiff's injuries. Failure to design the slide by the terminus to have a maximum angle of the slide runway at the exit between zero degrees and eleven degrees measured downward from horizontal and the failure of the Defendants to comply with the standards that conform the Consumer Product Safety Act.  The Defendants were negligent in failing to maintain the water depth by the slide terminus at the maximum water level in that area, although said depth was still below standards established by the Consumer Product Safety Act[.] [T]he Defendants have failed to properly warn Plaintiff that the drop area for the slide was below standards established for the safety of the swimming pool designs and operation.  Therefore, the force obtained from riding the slide was excessive and consequently dangerous for entering the water at depth of less than five (5) feet and as a result[,] injuries may occur to the lower extremities, such as what happened to the Plaintiff.

See id.

After the close of discovery, Defendants sought to preclude the testimony of Plaintiff's proposed liability expert, Matthew Diamond, under Federal Rule of Evidence 702 and Daubert v.

<u>Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993). <u>See</u> Defendants' <u>Daubert</u> Motion, ECF Nos. 51, 53. Mr. Diamond intended to "opine that the depth of the pool present[ed] a danger to its users." <u>See</u> Plaintiff's <u>Daubert</u> Opposition, ECF No. 52, p. 1.

Following the filing of the fully briefed motion, oral argument was held, during which the Court orally granted Defendants' motion to exclude the testimony of Mr. Diamond, with a written decision to follow. <u>See</u> Transcript of 3/18/2016 Conference ("3/18/2016 Tr."), ECF No. 57, 16:19-21.[3] Questioning the procedural posture of the case moving forward, the Court stated the following:

> So then the question is[,] how is this case going forward without the expert[?] This is the issue that raises concern for me[,] which is that when there's a case about a design defect[,] which is[,] I believe[,] what the theory that plaintiff is offering here[,] in that the pool wasn't deep enough given the slide.

3/18/2016 Tr., ECF No. 57, p. 21:22 – 22:2. Plaintiff's counsel did not directly respond to the Court's observation that Plaintiff had proceeded only on a theory of defective design via his expert.

Similarly, the Court's subsequent written decision on Defendants' <u>Daubert</u> motion reviewed the expert report, which only discussed a defective design theory:

> Based upon Mr. Diamond's report, which asserts that "the water [wa]s too shallow," and Plaintiff's opposition to Defendants' <u>Daubert</u> motion, which asserts that Mr. Diamond would "opine that the depth of the pool present[ed] a danger to its users," Plaintiff now proceeds on the theory that the subject pool and/or waterslide was defectively designed.

---

[3]      Citations to the transcript refer to the relevant page and line number.

4

<u>See</u> 3/28/2016 Order ("<u>Daubert</u> Decision"), ECF No. 56, p. 7 (internal citations omitted) (alterations in the original).[4]

## III.    STANDARD OF REVIEW

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>Kwong v. Bloomberg</u>, 723 F.3d 160, 164-65 (2d Cir. 2013); <u>Redd v. N.Y. Div. of Parole</u>, 678 F.3d 166, 174 (2d Cir. 2012). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.</u>, 444 F.3d 158, 162 (2d Cir. 2006) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)). The "mere existence of a scintilla of evidence" is not enough to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotations omitted); <u>see</u> <u>Anderson</u>, 477 U.S. at 252. The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." <u>Pinto v. Allstate Ins. Co.</u>, 221 F.3d 394, 398 (2d Cir. 2000). The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 n.4 (1986).

---

[4]    Following the filing of the Court's written <u>Daubert</u> decision, but before a briefing schedule was set for the instant summary judgment motion, Plaintiff's former attorneys sought to withdraw as counsel. <u>See</u> ECF No. 59. The Court granted the motion to withdraw, and Plaintiff's current attorney was substituted as counsel. <u>See</u> 5/5/2016 Order.

## IV.    DISCUSSION

Neither the Amended Complaint nor Plaintiff's opposition papers is entirely clear but, as explained below, it appears that Plaintiff now seeks to assert two additional theories of liability: a products liability claim based on the failure-to-warn and negligence.[5]

### 1.    Products Liability

"New York law[6] provides four theories upon which a claim of products liability may be founded: (1) express warranty; (2) implied warranty; (3) negligence; and (4) strict liability." Hilaire v. DeWalt Indus. Tool Co., 54 F. Supp. 3d 223, 252 (E.D.N.Y. 2015) (citing Voss v. Black & Decker Mfg. Co., 450 N.E.2d 204, 207 (1983). Although Plaintiff proceeds on a negligence theory only, see Amended Complaint, ECF No. 24-1 ¶ 18, "[i]n order to make out a prima facie case on any of these four theories, the plaintiff must show that the product at issue was defective, and that the defectively designed product was the actual and proximate cause of the plaintiff's injury." Id. (citing Voss, 450 N.E.2d at 208-09); see 89 N.Y. Jur. 2d Products Liability § 2.

---

[5]    As Defendants seek dismissal of the entirety of Plaintiff's Amended Complaint, combined with the fact that Plaintiff makes no mention of any intention to assert any additional claims beyond products liability and negligence in his opposition papers, the Court deems any other conceivable claim abandoned. See Jackson v. Fed. Exp., 766 F.3d 189, 195 (2d Cir. 2014) ("[A] partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims."); Arma v. Buyseasons, Inc., 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (internal quotation marks & citation omitted)).

[6]    Although Plaintiff's injury occurred in Jamaica, the Parties have agreed to the application of New York law. See Defendants' Memorandum of Law ("Defs' Memo."), ECF No. 65-8, p. 6 n.4; see also Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 239 n.4 (2d Cir. 1999) ("The parties agree that New York law governs this action, and we therefore apply it."); Vicuna v. O.P. Schuman & Sons, Inc., 106 F. Supp. 3d 286, 298 (E.D.N.Y. 2015) ("The parties here agree that New York law applies to Plaintiffs' . . . claims. Thus, New York's law controls.").

"There are three types of defects recognized under New York law: (1) design defects; (2) manufacturing defects; and (3) defective or inadequate warnings." Voss, 450 N.E.2d at 207; see McCarthy v. Olin Corp., 119 F.3d 148, 154-55 (2d Cir. 1997). Here, Plaintiff asserts a products liability claim based on two possible theories: design defect and failure-to-warn. The Court will address each in turn.

###### i. Defective Design

Plaintiff does not specifically so state, but his opposition papers suggest, that Plaintiff believes both the waterslide and pool were defectively designed. See Plaintiff's Opposition, ECF No. 65-14, p. 6. "Under New York law, a plaintiff asserting a claim for defective design must show that: (1) the product, as designed, posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury." Valente v. Textron, Inc., 931 F. Supp. 2d 409, 437 (E.D.N.Y. 2013) (quoting Rupolo v. Oshkosh Truck Corp., 749 F. Supp. 2d 31, 42 (E.D.N.Y. 2010)); see Voss, 450 N.E.2d at 208. "The first two prongs are often referred to as the risk-utility balancing test and are used to determine whether a product is defective or 'unreasonably dangerous.'" Sorto-Romero v. Delta Int'l Mach. Corp., 05 Civ. 5172 (SJF) (AKT), 2007 U.S. Dist. LEXIS 71588, at *27 (E.D.N.Y. Sept. 24, 2007) (citing Anderson v. Hedstrom Corp., 76 F. Supp. 2d 422, 454 (S.D.N.Y. 1999) & Cover v. Cohen, 61 N.Y.2d 261, 266 (1984)). "Critically . . . this analytical framework requires a plaintiff to prove, via expert testimony, the existence or feasibility of an alternative design which would have prevented the accident." Beruashvili v. Hobart Corp., 05 Civ. 1646 (ENV) (MDG), 2010 U.S. Dist. LEXIS 146015, at *37 (E.D.N.Y. July 15, 2010) (citing Rypkema v. Time Mfg. Co., 263 F. Supp. 2d 687, 691-92 (S.D.N.Y. 2003)); Hilaire, 54 F. Supp. 3d at 252 ("New York law requires plaintiffs to use expert testimony

as to the feasibility and efficacy of alternative designs in order to prove a design defect.") (citing Cuntan v. Hitachi Koki USA, Ltd., 06 Civ. 3898 (RRM) (CLP), 2009 U.S. Dist. LEXIS 127016, at *18-19 (E.D.N.Y. Sept. 15, 2009), adopted by 2009 U.S. Dist. LEXIS 126099 (E.D.N.Y. Oct. 14, 2009) (citing cases)).

Having already had the testimony of Plaintiff's expert, Mr. Diamond, excluded, see Daubert Decision, ECF No. 56, p. 12, Plaintiff does not offer any evidence that the pool or waterslide was defectively designed—let alone that any such defect was a substantial factor in causing Plaintiff's injury—or any evidence of the feasibility of an alternative design that would have otherwise prevented the accident.  See Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 271 (2d Cir. 2002) (affirming the district court's grant of summary judgment because, without the expert evidence, the plaintiffs did not have "any admissible evidence in support of their theory of causation"); Brooks v. Outboard Marine Corp., 234 F.3d 89, 92 (2d Cir. 2000) ("Having determined that the district court acted within its discretion in excluding [the plaintiff's expert testimony], the plaintiff has no evidence in the record to support his theory that the motor had a design defect which caused the accident or increased its severity."); Fernandez v. Cent. Mine Equip. Co., 670 F. Supp. 2d 178, 188 (E.D.N.Y. 2009) ("Having ruled that plaintiff's proposed expert testimony is inadmissible, plaintiff has no evidence to support his claims that amounts to anything more than that he was injured while using the [the product] manufactured by defendants." (internal quotations & alterations omitted)); Galletta v. Valmet, Inc., 04 Civ. 313 (NAM), 2007 U.S. Dist. LEXIS 23665, at *15-16 (N.D.N.Y. Mar. 30, 2007) (dismissing the plaintiff's design defect claim where no expert testimony of a feasible alternative design was presented).  Plaintiff argues that, even without expert testimony, he can nonetheless establish a design-defect claim through lay testimony.  See Pl's Opp., ECF No. 65-14, p. 5.  More

particularly, Plaintiff claims this matter to be a "clear example . . . where [a] jury requires no expert assistance," equating such a constraint to requiring a home construction expert to "attest to whether a broken stair in a house [i]s dangerous." Id. p. 6.

In theory, Plaintiff is correct insofar as, in limited circumstances, expert testimony may not be required to prove a design defect. Indeed, "[i]n cases where lay testimony is sufficient to allow a reasonable jury to find that the elements of a product defect have been set forth, courts have allowed plaintiffs to proceed even without any expert testimony." Castaldi v. Land Rover N. Am., Inc., 06 Civ. 1008 (JG) (KAM), 2007 U.S. Dist. LEXIS 85809, at *27 (E.D.N.Y. Nov. 21, 2007); Valente, 931 F. Supp. 2d at 437 ("A plaintiff is generally required to provide expert testimony in order to establish the feasibility and efficacy of an alternative design, unless 'a reasonable alternative design is both obvious to, and understandable by, a layperson.'" (quoting Soliman v. Daimler AG, 10 Civ. 408 (SJF) (AKT), 2011 U.S. Dist. LEXIS 112599, at *8 (E.D.N.Y. Sept. 30, 2011)). In such cases, however, the relevant defects are "within the common knowledge of a juror." Buckley v. Gen'l Motors Corp., 98 Civ. 4366 (BSJ), 2004 U.S. Dist. LEXIS 5654, at *9 (S.D.N.Y. Apr. 2, 2004) ("A plaintiff need not introduce expert testimony to establish that a vehicle should neither veer nor lean to one direction if the driver is not steering in that direction, that a vehicle should slow down when the brake is applied, and that a vehicle should not roll over under normal driving conditions; such a conclusion is within the common knowledge of the jury."); see, e.g., Faryniarz v. Nike, Inc., 00 Civ. 2632 (NRB), 2002 U.S. Dist. LEXIS 6023, at *5-6 (S.D.N.Y. Apr. 8, 2002) (allowing plaintiff to prove a prima facie case of product liability without expert testimony regarding causation when the claim was that sneakers were defectively designed such that their laces would catch on their pull-tabs); W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 41, at 270 (5th ed. 1984) ("[C]ommon knowledge

9

may provide a basis from which the causal sequence may be inferred.").  As explained in Buckley, supra, and similar to Plaintiff's "broken stair" analogy, an expert is not necessarily needed to explain to a jury that, when properly designed, an automobile's brake system should stop a vehicle when the brakes are applied nor should a vehicle roll over under normal driving conditions.  See Buckley, 2004 U.S. Dist. LEXIS 5654, at *9.

Here, on the other hand, a lay person would neither readily understand nor necessarily find obvious the nature of pool and/or waterslide design.  Designing a pool and waterslide, particularly in conjunction with one another, requires specialized and technical knowledge taking into account, among other topics: the proper length and/or angle of a waterslide bearing in mind the speed a user may reach while descending; the effect of friction created by a user's body and/or bathing suit on the waterslide; whether such friction is affected by water flow on the waterslide itself and/or water tube; and the proper depth and/or angle of a pool floor, bearing in mind the varying weight of users and the speed at which such users will reach while riding the waterslide in order to allow for safe entry into the water.  See Guarascio v. Drake Assocs., 582 F. Supp. 2d 459, 463 (S.D.N.Y. 2008) ("New York courts uniformly rule that competent, non-conclusory expert testimony is needed in cases involving more complex [defective] design issues.") (collecting cases).  To be clear, this is not a situation where Plaintiff has presented evidence that the angle of the waterslide or depth of the pool was so patently defective such that common knowledge could dictate a finding that Defendants are liable under this theory.[7]  In fact,

_____

[7]     Such might be the case, for example, if Plaintiff presented evidence that the waterslide was built at a near 90 degree angle, or the pool depth at the waterslide terminus was 10 inches deep.

neither party has provided the Court with competent evidence of the length/angle of the waterslide or the depth of the pool on the day of the accident.[8]

As Plaintiff has provided no expert testimony as to a reasonable, alternative pool and/or waterslide design, and such evidence is required by New York law under the circumstances, his negligence claim, insofar as it is premised on the theory that Defendants' pool and/or waterslide was defectively designed, is dismissed.

### ii.    Failure-To-Warn

In addition to a theory of products liability predicated upon a defective design, Plaintiff seeks to recover based upon a theory of failure-to-warn.

### a.    Whether Plaintiff Asserts A Failure-To-Warn Claim

Before reaching the substance of Plaintiff's failure-to-warn claim, the Court must first consider a threshold issue: whether Plaintiff has even asserted a failure-to-warn claim.

Defendants argue that Plaintiff has not alleged a negligence claim based on a failure-to-warn theory of liability, see Defs' Memo., ECF No. 65-8, p. 8, and contend that Plaintiff's attempt to do so now, "well after discovery has concluded," is "an obvious response to the Court's preclusion of [P]laintiff's [defective design] liability expert witness," see Defendants' Reply Memorandum of Law ("Defs' Reply"), ECF No. 65-10, p. 5.  To the extent Plaintiff asserts such a claim, Defendants suggest, it is limited to Defendants' alleged failure to warn

---

[8]    As explained in further detail below, see Section IV(2), infra, Plaintiff submitted an affidavit in support of his opposition papers which purports to attest to the approximate depth of the water on the day of the accident, but which is both self-contradictory and inconsistent with his prior deposition testimony.  As such, the Court has disregarded that portion of his affidavit. See Cruz v. Corizon Health, 13 Civ. 2563 (CS), 2016 U.S. Dist. LEXIS 116408, at *16-17 n.8 (S.D.N.Y. Aug. 29, 2016) ("A party, however, 'may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous deposition testimony.'" (quoting Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996)).

Plaintiff "that the drop area for the slide was below standards established for the safety of swimming pool designs and operation." See Defs' Memo., ECF No. 65-8, p. 8 (quoting Plaintiff's Fed. R. Civ. P. 26(a) Disclosures, Kauffman Decl., ECF No. 65-2 ¶ 5, Ex. C).

Plaintiff, on the other hand, claims that his Amended Complaint and Fed. R. Civ. P. 26(a) disclosures, however inartfully drafted, sufficiently assert a claim that Defendants failed to warn of the "risk and dangers associated with the use" of the subject pool and/or waterslide and the "risk of striking the bottom of the pool." See Pl's Opp., ECF No. 65-14, p. 7, 12.

As the Court touched on earlier, see Section II, supra, Plaintiff's Amended Complaint asserts various theories of liability, see Amended Complaint, ECF No. 24-1 ¶ 18. Of particular note, though, Plaintiff alleges that Defendants "failed to maintain the water in the pool at a reasonable level as to prevent [an] accident"; "fail[ed] to provide warning signs"; and "fail[ed] to give signal or warning of the dangerous/defective condition." See id. Moreover, while Plaintiff's Fed. R. Civ. P. 26(a) disclosures contained a "theory of liability" section, it is unclear the purpose for doing so, as the federal rule governing these disclosures does not require such an inclusion. See Fed. R. Civ. P. 26(a)(1) (requiring each party, without awaiting a discovery request, to provide witnesses and documents it may use to support its case, a computation of damages, and any relevant insurance agreements).

Admittedly, as this Court has previously lamented, see, e.g., Daubert Decision, ECF No. 56, p. 7 ("Plaintiff's Amended Complaint mentions various amorphous theories [of liability], but when pressed by the Court during the pendency of this litigation, Plaintiff did not provide a coherent theory.") (internal citations omitted), Plaintiff did not clearly state the theory (or theories) of liability on which he intended to proceed during the course of this litigation. Defendants have not cited to any case law or federal rule which necessarily required Plaintiff to

affirmatively commit to a particular theory of liability during discovery, at least where, as here, various theories, including this one, were asserted in the operative pleading.

Although the Court recognizes Defendants' plight insofar as discovery may be complicated by the lack of a clear theory of liability against which to defend, Defendants could have issued contention interrogatories to focus Plaintiff's theories, but apparently did not do so. See Moore's Federal Practice § 33.78 (2016) ("[T]he purpose of contention interrogatories is to permit the propounding party to discover the theory of the responding party's case."); In re Methyl Tertiary Butyl Ether Products Liability Litigation, 00 Civ. 1898 (SAS), 2014 U.S. Dist. LEXIS 15966, at *10 (S.D.N.Y. Feb. 6, 2014) ("Failure to timely amend a contention interrogatory can bar use of a theory of liability."). As such, Plaintiff is not prohibited from proceeding on his failure-to-warn theory.

In light of the above, Plaintiff has properly asserted a failure-to-warn theory of negligence liability.

> **b.** **Whether Plaintiff's Failure-To-Warn Claim Survives Summary Judgment**

As noted above, Plaintiff claims that Defendants failed to warn him of the "risk and dangers associated with the use" of the subject pool and/or waterslide and the "risk of striking the bottom of the pool." See Pl's Opp., ECF No. 65-14, p. 7, 12.

"To establish a claim for failure[-]to[-]warn, a plaintiff must prove that: '(1) a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that failure to do so was the proximate cause of the

harm."[9] Valente, 931 F. Supp. 2d at 440 (quoting State Farm Fire & Cas. Co. v. Nutone, Inc., 426 F. App'x 8, 10 (2d Cir. 2011) (citing Liriano v. Hobart Corp., 92 N.Y.2d 232, 237 (1998))); see Bravman v. Baxter Healthcare Corp., 984 F.2d 71, 75 (2d Cir. 1993) ("A plaintiff proceeding under a failure-to-warn theory in New York must demonstrate that the failure to warn adequately of the dangers of a product was a proximate cause of his or her injuries." (citing Glucksman v. Halsey Drug Co., Inc., 553 N.Y.S.2d 724, 726 (1st Dept. 1990))). "As part of satisfying those elements, a plaintiff is 'required to prove that the product did not contain adequate warnings.'" Reed v. Pfizer, Inc., 839 F. Supp. 2d 571, 575 (E.D.N.Y. 2012) (quoting Mulhall v. Hannafin, 841 N.Y.S.2d 282, 285 (1st Dept. 2007)); see Fisher v. Multiquip, Inc., 949 N.Y.S.2d 214, 218 (3rd Dept. 2012) ("Liability for failure to warn may be imposed based upon either the complete failure to warn of a particular hazard or the inclusion of warnings that are insufficient.") (internal quotations omitted).

"[W]hether warnings were adequate to deter potential misuse and whether the failure to warn was a substantial cause of the injury is ordinarily a question for the jury." Clarke v. LR Sys., 219 F. Supp. 2d 323, 329 (E.D.N.Y. 2002) (citing Howard v. Poseidon Pools, Inc., 530 N.E.2d 1280, 1281 (1988)); see Mustafa v. Halkin Tool, Ltd., 00 Civ. 4851 (DGT), 2007 U.S. Dist. LEXIS 23096, at *64 (E.D.N.Y. Mar. 29, 2007). "However, a court may dismiss a failure-to-warn claim as a matter of law if: (1) the defendant had no duty to warn because the hazard was patently dangerous or posed an open and obvious risk; or (2) the plaintiff cannot prove causation because 'the injured party was fully aware of the hazard through general knowledge, observation or common sense, or participated in the removal of a safety device whose purpose is

---

[9] Defendants do not contend that they are not liable because they did not "manufacture" the subject pool and/or waterslide. Therefore, without making any determination as to its strength, the Court does not consider the effect of such an argument.

obvious.'" Clarke, 219 F. Supp. 2d at 329 (quoting Liriano v. Hobart Corp., 700 N.E.2d 303, 308 (1998)); see Burke v. Spartanics Ltd., 252 F.3d 131, 137 (2d Cir. 2001) (no causation when plaintiff was actually aware of the danger of placing his hand in the cutting plane of a metal shearing machine); Howard, 530 N.E.2d at 1281 (no causation when the plaintiff, with general knowledge of pools and common sense, dove into shallow end and was injured). "In both of these scenarios, the duty to warn is effectively vitiated by the factual circumstances." Rogers v. Westfalia Associated Techs., 485 F. Supp. 2d 121, 129 (N.D.N.Y. 2007).

Relatedly, "[u]nder the primary assumption of risk doctrine, 'by engaging in a sport or recreational activity, a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation.'" Charles v. Young Life Lake Champion, 11 Civ. 401 (VB), 2013 U.S. Dist. LEXIS 77067, at *9 (S.D.N.Y. May 21, 2013) (quoting Morgan v. State, 685 N.E.2d 202, 207 (1997)); Leslie v Splish Splash at Adventureland, 766 N.Y.S.2d 599, 599 (2nd Dept. 2003) ("A plaintiff is barred from recovery for injuries which occur during voluntary sporting or recreational activities if it is determined that he or she assumed the risk as a matter of law."); Turcotte v. Fell, 502 N.E.2d 964, 968 (1986) (noting participants consented "to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation"). "The proprietor of a recreational venue therefore has only 'a duty to exercise care to make the conditions as safe as they appear to be. If the risks of the activity are fully comprehended or perfectly obvious, plaintiff has consented to them and defendant has performed its duty.'" Charles, 2013 U.S. Dist. LEXIS 77067, at *9 (quoting Morgan, 685 N.E.2d at 207 & Turcotte, 502 N.E.2d 964 at 968). "This consent extends to 'readily appreciable' risks from open and obvious or 'less than optimal' conditions at the venue, but not to risks that are concealed, unreasonably enhanced by the

proprietor, or 'unique and . . . dangerous condition[s] over and above the usual dangers that are inherent in the sport.'" Id. (quoting Morgan, 685 N.E.2d at 207); see Martin v. State, 878 N.Y.S.2d 823, 826 (3rd Dept. 2009) ("[I]t is irrelevant that a defendant could feasibly have provided safer conditions.").

Defendants argue that Plaintiff was fully aware of the risks associated with riding the waterslide, and assumed those risks, as he knew he would fall into the water after the riding the waterslide and knew he could be injured doing so. See Defs' Memo., ECF No. 65-8, p. 7-8. Plaintiff counters that that risk of injuring his foot by hitting same at the bottom of the pool "could not have been 'comprehended' and . . . was far from 'perfectly obvious[,]' as the law requires" in order to negate Defendants' duty to warn or to invoke the assumption of risk defense. See Pl's Opp., ECF No. 65-14, p. 11.

The Court agrees with Plaintiff that Defendants have not met their burden to establish that, based on the undisputed facts and construing those facts in the light most favorable to Plaintiff, the hazard of which Plaintiff complains was so patently obvious so as to negate Defendants' duty to warn, see Clarke, 219 F. Supp. 2d at 329, or that the relevant risks were readily appreciable such that Plaintiff assumed such risks, see Charles, 2013 U.S. Dist. LEXIS 77067, at *9.

Defendants cite only one case, Clarke v. LR Sys., 219 F. Supp. 2d 323 (E.D.N.Y. 2003), in support of their argument. In Clarke, the plaintiff was injured when he stuck his hand in a plastic grinding machine, which he had operated for several years, in order to clear a blockage without first turning off the power source. See Clarke, 219 F. Supp. 2d at 327-28. The District Court granted summary judgment on the plaintiff's failure-to-warn claim explaining that the plaintiff acknowledged several times in his deposition that "he knew it was dangerous to put his

hand [in the machine] without first turning off the power," and thus, the plaintiff was "actually aware of the danger." Clarke, 219 F. Supp. 2d at 330. Analogizing the within matter to Clarke, Defendants argue that Plaintiff "was aware before using the waterslide of the chance of getting hurt riding it." See Defs' Memo., ECF No. 65-8, p. 7. Defendants cite to Plaintiff's deposition to establish this point:

> Q:     Did you have an understanding there was a chance you c[ould] get hurt riding the waterslide before you went on it?
> A:     I know I am going to—because I saw some people going down.

See Plaintiff's Deposition Transcript ("Pl's Dep."), Kauffman Decl., ECF No. 65-2 ¶ 7, Ex. E, 72:16-20.

There are two problems with Defendants' argument. First, Defendants do not present a full statement of Plaintiff's testimony. For clarity sake, the entire colloquy is as follows:

> Q:     Did you have an understanding there was a chance you c[ould] get hurt riding the waterslide before you went on it?
> A:     I know I am going to—because I saw some people going down. It looks like they were having fun. I wasn't thinking[,] if I get on this tube[,] I'm going to end up breaking a leg or possibly seriously injured or even death. That didn't cross my mind at all.

See id., 72:16-25. Read in context, Plaintiff clearly did not acknowledge being aware of any danger prior to using the waterslide.[10] At best, the portion of the transcript cited by Defendants is more appropriately described as a broken thought.

Second, even if Plaintiff was generally aware that he could be injured, this argument misses the mark. "[T]he issue here is not whether Plaintiff understood injury could result from

---

[10]     This point is reaffirmed by Plaintiff's affidavit submitted in support of his opposition to summary judgment, in which he states that he "had no idea that using the slide would expose [him] to the risk of striking [his] foot at the bottom of the pool at the end of the slide," and "used the slide under the assumption that the water was sufficient or the pool was deep enough to cushion [his] fall." See Plaintiff's Affidavit, ECF No. 65-13, p. 9 ¶ 9.

using the [waterslide], as Defendants contend.  Rather, the issue is whether, under the

circumstances, Plaintiff knew or could foresee the risk he was undertaking."  <u>Charles</u>, 2013 U.S.

Dist. LEXIS 77067, at *11.  As succinctly stated in a factually similar, waterslide-based action:

> Here, [Plaintiff] was engaged in the recreational activity of riding
> down a waterslide. [Plaintiff], however, was not injured by coming
> into contact with the interior of the slide[,] . . . he did not collide
> into another rider and was not injured by hitting a barrier clearly
> placed to keep riders from going too far in the splash pool. [] This
> is not a situation where the waterslide and splash pool functioned
> in the way they were intended to function, but an injury
> nonetheless occurred.  Instead, [the waterslide and/or pool] did not
> function as it was intended.  The dangerous condition posed by the
> ride was unique and over and above the usual dangers that are
> inherent in riding down a water slide.  On this record, [the Court]
> cannot conclude that [Plaintiff] had an appreciation of the nature of
> the risks presented, and was aware of the risk that the . . . pool
> would be inadequate to bring him to a safe halt upon his exit from
> the slide.

<u>Mussara v. Mega Funworks, Inc.</u>, 952 N.Y.S.2d 568, 573 (2nd Dept. 2012) (internal quotations

and citations omitted); <u>see</u> <u>Kriz v. Schum</u>, 549 N.E.2d 1155, 1160 (1989) (denying summary

judgment on failure-to-warn claim where the plaintiff executed a headfirst belly slide through an

inner tube into a pool rendering her a quadriplegic and no warning labels were affixed to the

slide).

Accordingly, an issue of fact remains as to whether the legal cause of Plaintiff's injury

was the allegedly negligent conduct of Defendants in failing to affix warnings to the waterslide

and/or pool or to otherwise warn Plaintiff of the risk of striking the bottom of the pool when

riding the waterslide.  Therefore, Defendants' motion for summary judgment seeking to dismiss

Plaintiff's negligence claim, insofar as it is premised on the theory that Defendants failed to warn

Plaintiff, is denied.

2. **General Negligence**

Plaintiff also seeks recovery under the general negligence theory that Defendants allegedly failed to maintain the water level of the pool at the "fill line." <u>See</u> Pl's Opp., ECF No. 65-14, p. 13. "To establish a <u>prima facie</u> case of negligence under New York law, three elements must be demonstrated: (1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach." <u>Curley v. AMR Corp.</u>, 153 F.3d 5, 13 (2d Cir. 1998) (citations omitted). "Negligence is conduct falling beneath the standard of care which would be exercised by a reasonably prudent person in similar circumstances at the time of the conduct at issue." <u>Thaqi v. Wal-Mart Stores East, LP</u>, 09 Civ. 755 (JMA), 2014 U.S. Dist. LEXIS 45107, at *11 (E.D.N.Y. Mar. 31, 2014) (quoting <u>Harper v. United States</u>, 949 F. Supp. 130, 132 (E.D.N.Y. 1996)).

In support of this claim, Plaintiff cites his own affidavit and a photograph of the subject pool and waterslide, both of which are attached to his opposition papers. As depicted in the photograph, the pool contains a fill line of 3'6", but the water level is several inches below the fill line. <u>See</u> Photograph, ECF No. 65-13, p. 11. According to Plaintiff's affidavit, the water level depicted in the photo is "substantially similar to that as it was on the date of [the] accident," <u>see</u> Affidavit of Bruno Pierre ("Pl's Aff."), ECF No. 65-14, p. 9 ¶ 7, which, in Plaintiff's view, is sufficient to allow "a jury . . . to decide whether the pool was kept at maximum level capacity to safely cushion [water]slide users . . . [and] whether the stated 3.6-foot depth of the pool is . . . safe for adult slide users." <u>See</u> Pl's Opp., ECF No. 65-14, p. 13. There are multiple issues with Plaintiff's argument.

First, whether the depth of the pool was safe for adult users is the functional equivalent of Plaintiff's claim that the pool was defective designed, which this Court has already discussed,

and dismissed.  See Section IV(1)(i), supra.  Plaintiff cannot avoid the need for an expert on the topic by couching his claim as general negligence rather than as products liability.

Second, even assuming that the failure to fill the pool to the 3'6" fill line could be considered negligent, Plaintiff has failed to present competent evidence of same.  Plaintiff's own affidavit is self-contradictory on the topic: Plaintiff initially claims that he "do[es] not have a specific recollection of the actual water height in the pool on the date of [his] accident," see Pl's Aff., ECF No. 65-14, p. 9 ¶ 6, but immediately follows with, "I believe that the water level shown in the photograph is substantially similar to that as it was on the date of [the] accident," see Pl's Aff., ECF No. 65-14, p. 9 ¶ 7.  These back-to-back statements are entirely inconsistent with one another.  Similarly, and as Defendants point out, Plaintiff's deposition testimony conflicts with his affidavit.  At his deposition, when showed the same photograph Plaintiff now uses to support his claim in his opposition papers, Plaintiff was unable to confirm whether the photograph depicted the area in which he was injured or, more significantly, provide the approximate water level on the date of the accident.[11]  As the Second Circuit has explained,

---

[11]
Q:     Is this the area where you were hurt?
A:     I can't be [one] hundred percent . . . .

        *     *     *     *     *

Q:     So you don't know or can't say for sure whether this shows the area where you were hurt?
A:     Not [one] hundred percent sure.
Q:     As far as you know, this could [have] been taken in Grenada or somewhere?
A:     I don't know.
Q:     What I'm saying is, do you know if this is [the Resort] or could this be some other property?
A:     I don't know where these pictures are from.
Q:     Does the area where you landed look similar to what's shown in that photograph?
A:     It could be.

        *     *     *     *     *

Plaintiff "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts [his] previous deposition testimony." Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). In the face of Plaintiff's inability to produce competent evidence regarding the actual water depth on the day of the accident, Plaintiff cannot sustain a claim that Defendants negligently failed to maintain the water level at the appropriate depth. See Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (non-moving party cannot overcome summary judgment through "mere speculation or conjecture as to the true nature of the facts").

In light of the above, Plaintiff's general negligence claim is dismissed.

## V. DISCOVERY

There is no doubt that Plaintiff's failure to present a clear theory of liability has hampered Defendants' ability to conduct discovery. This is notable given the Court's numerous inquiries as to Plaintiff's theory, see, e.g., ECF No. 26, and that Plaintiff only clearly articulated his failure-to-warn theory when new counsel joined the case, see Footnote 4, supra.

So as to not prejudice Defendants because of Plaintiff's dilatory conduct, see ECF Nos. 22, 61, Defendants may supplement their Fed. R. Civ. P. 26 disclosures in order to identify documents and/or witnesses related to Plaintiff's failure-to-warn theory within thirty (30) days of the date of this Order. Copies of any documents identified should be produced within ten (10) days thereafter. If Defendants choose to present an expert on this issue, Defendants may offer an expert report within sixty (60) days of this Order. Plaintiff's rebuttal expert report, if any, would

---

Q:   Do you know how tall the water was in the area where you landed?
A:   I don't have that information. I'm not sure.

See Pl's Dep., Kauffman Decl., ECF No. 65-2 ¶ 7, Ex. E, 74:5-7; 74:15-22; 75:4-12; 75:15-18.

be due within thirty (30) days of service of Defendants' expert report. No expert depositions are permitted. Discovery otherwise is <u>not</u> reopened. For example, depositions of witnesses now disclosed by Defendants in their Fed. R. Civ. P. 26 supplemental disclosures are not permitted. Moreover, Plaintiff may not supplement the evidentiary record, notwithstanding the possibility of a rebuttal expert, at this late date.

## VI.    CONCLUSION

In light of the above, Defendants' motion for summary judgment is **granted in part and denied in part**. A status conference is scheduled for October 6, 2016 at 4:00 p.m. to set a trial date.

Dated:  Brooklyn, New York
       September 12, 2016

*Vera M. Scanlon*

VERA M. SCANLON
United States Magistrate Judge